IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MADIA GREAVES, | : | CIVIL ACTION |
| --- | --- | --- |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| ERIC SHINSEKI, *et al.*, | : | NO. 11-6270 |
| *Defendants*. | : | |

## MEMORANDUM

GENE E.K. PRATTER                                                         JULY 18, 2013

Plaintiff Madia Greaves, a nurse employed by the United States Department of Veterans Affairs ("the VA") at its Philadelphia Veterans Administration Medical Center ("PVAMC"), alleges that the VA discriminated against her based upon her national origin. The VA has filed a Motion for Summary Judgment which would, if granted, dispose of the case in its entirety. For the reasons set forth below, this Motion will be granted.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

For purposes of this Motion, the Court considers whether the record presents any genuine issues of material fact that would allow a reasonable jury to find in favor of Ms. Greaves. *See Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988); *see also Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267 (3d Cir. 2010) (noting that at the summary judgment stage, courts must draw all reasonable inferences and resolve conflicting evidence in favor of the non-moving party). With this standard in mind, the facts set forth here are undisputed unless otherwise noted.

Ms. Greaves, who is Liberian by national origin, accepted a position with the PVAMC as a Registered Nurse, Level I ("Nurse I") in October 2006. Since the start of her employment, Ms. Greaves has worked as a Nurse I in Unit 2C, a long-term care nursing unit of the Community

1

Living Center ("CLC") at the PVAMC. She serves as a Charge Nurse for her unit, and her responsibilities include supervising other nurses and overseeing patient care. Ms. Greaves alleges that in March 2010, the VA unreasonably failed to promote her from Nurse I to Registered Nurse, Level II ("Nurse II"), on the basis of her Liberian national origin.

Approximately once a year, the PVAMC reviews a nurse's performance and evaluates the nurse's eligibility for promotion. A promotion from the position of Nurse I to the position of Nurse II requires: (1) a Bachelor of Science degree in Nursing ("BSN"); (2) 2 to 3 years of nursing experience; and (3) achieving performance requirements known as "performance dimensions,"[1] which comprise (i) practice, (ii) professional role, (iii) collaboration, and (iv) scientific inquiry.

Nurse I and Nurse II nurses have the same responsibilities and perform the same duties, but a Nurse II is expected to perform those duties at a "higher level" by advancing his or her professional abilities and achieving measurable outcomes that benefit the unit as a whole. *Suppl. Mem. L. in Supp. of Defs.' Mot. Summ. J.* (Doc. No. 31). For example, while a Nurse I may "[d]emonstrate[] proficiency using the nursing process in providing care for clients with complex nursing care needs," a Nurse II is expected to "[a]ppl[y] the nursing process to systems or processes at the unit/team/work group level to improve care." VA Handbook 5005/27 (Doc. No. 31, Ex. 9).

---

[1] Ms. Greaves contends that the VA did not consider performance dimensions in evaluating nurses for promotion to Nurse II in 2009. However, all the evidence she presents shows that the VA did require nurses to achieve performance dimensions. Clinical Path Brochure (Doc. No. 30, Ex. I) (providing that a nurse: (1) "must meet all standards under the new [performance] dimension for the grade and level desired," "must meet all years of experience requirement," and "must meet educational requirement" in order to be promoted). Further, Ms. Greaves admitted that she was informed of the performance dimensions when she received her 2006 orientation training, and when she received annual Board Actions discussing these performance dimensions since she began her employment at the VA. Dep. of Madia Greaves, March 29, 2013 ("Greaves Dep."), at 61:6-9, 106:21-107:8, 143:11-23, 153:22-154:2, 154:16-155:15 (Doc. No. 31, Ex. 3). Thus, Ms. Greaves has failed to raise a genuine factual dispute as to whether the VA required nurses to satisfy performance dimensions for promotion during the 2009 review period.

The VA's process for evaluating a nurse's eligibility for promotion generally proceeds in the following sequence: (1) an optional self-evaluation by the nurse; (2) a Proficiency Report prepared by the nurse's supervisor, which incorporates the self-evaluation (if provided) and rates the nurse's performance; (3) review of the rating in the Proficiency Report by the Associate Chief Nurse; (4) review of the Proficiency Report by the VA Nurse Professional Standards Board ("Board"), of which three to five voting members (from a pool of approximately 16 members) issue a Board Action with a recommendation as to promotion; (5) review of the Board Action by a Nurse Executive; and (6) final approval of the Board Action by the Medical Director.

As it had done it previous years, the VA used this process to review Ms. Greaves's performance from October 2008 through October 2009.[2] The parties dispute whether Ms. Greaves provided a self-evaluation of her 2009 performance to her Nurse Manager and direct supervisor, Brian Griffin. On November 13, 2009, Mr. Griffin prepared a Proficiency Report of Ms. Greaves's 2009 performance, which did not incorporate any self-evaluation because, as the report notes, Ms. Greaves "[w]as offered [the opportunity] to provide feedback into her proficiency report but did not conduction [sic] a self-evaluation." Doc. No. 17, Ex. 4. The Proficiency Report gives Ms. Greaves an overall rating of "satisfactory," which meant that she "has met all criteria; at times exceeds expectations."[3] Associate Chief Nurse Theodore Clay, Mr. Griffin's supervisor, reviewed the ratings given in the Proficiency Report. Ms. Greaves

---

[2] For the sake of simplicity, the Court will refer to this period of time as Ms. Greaves's "2009 performance."

[3] The VA performance ratings scheme rates nurses as: (a) <u>Unsatisfactory</u>: has not met all criteria; (b) <u>Low Satisfactory</u>: has met all criteria, but at times performance marginal; (c) <u>Satisfactory</u>: has met all criteria, at times exceeds expectations; (d) <u>High Satisfactory</u>: has met all criteria, usually exceeds expectations by a substantial margin; or (e) <u>Outstanding</u>: has met all criteria, consistently exceeds expectations to an exceptional degree. Doc. No. 17, Ex. 4.

signed the report, acknowledging that she had reviewed it and had had an opportunity to discuss it with Mr. Griffin before it was submitted to the Board.

On December 10, 2009, the Board issued a Board Action recommending the non-promotion of Ms. Greaves. The Board Action, signed by Board members John Boudwin, Velma Stewart, and Linda Garvin, and by human resources executive Josephine Langston-Davis, explains that although Ms. Greaves met the educational and experience requirements expected of a Nurse II, she did not meet any of the required performance dimensions.

Nurse Executive Cynthia Heidt agreed with the Board's recommendation, and Margaret Caplan,[4] for and in the absence of Medical Director Richard Citron, made the final decision to approve the Board's recommendation and decline to promote Ms. Greaves.

On March 19, 2010, Ms. Greaves received a memorandum from Ms. Heidt informing her that she had been denied promotion. Doc. 17, Ex. 1. On May 17, 2010, she filed a timely complaint with the VA's Equal Employment Opportunity ("EEO") office, alleging that her non-promotion was based on her national origin, and claiming that the employment discrimination occurred in April 2010. On June 17, 2010, the VA began investigating her complaint.

On March 25, 2011, the VA Office of Employment Discrimination and Complaint Adjudication issued a final agency decision[5] and Notification of Right to Sue, informing Ms. Greaves that she had 90 days to file a civil action in a United States District Court.

Ms. Greaves filed a Complaint in the District Court for the District of New Jersey on June 23, 2011, which was transferred to this district on October 5, 2011.

---

[4] The parties do not provide the job title of Ms. Caplan.
[5] This decision is not part of the record before this Court.

## II.     SUMMARY JUDGMENT STANDARD

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

At the summary judgment phase, the movant bears the initial responsibility to inform the court of the basis for the motion and to identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the movant's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P.

56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**III. DISCUSSION**

As a threshold matter, the Court will address the scope of Ms. Greaves's claims.

**A. Stipulation to Partial Dismissal of Claims**

The parties have stipulated to the dismissal of Counts II through IX of Ms. Greaves's 10-count Complaint for lack of subject matter jurisdiction. Doc. No. 19, at 11 n. 6. These claims include violations of the Equal Pay Act (Count II), the New Jersey Law Against Discrimination (Count III), the Pennsylvania Human Relations Act (Count IV), New Jersey public policy (Count V), Pennsylvania public policy (Count VI), intentional infliction of emotional distress (Counts VII), negligent infliction of emotional distress (Count VIII), and breach of contract (Count IX). The Court accepts this stipulation, dismisses these counts, and also dismisses the United States as a defendant.[6]

With respect to Ms. Greaves's remaining claim under Title VII (Count I), at the Final Pretrial Conference held on July 2, 2013, the parties agreed that this claim is limited to discrimination based on national origin, not race or retaliation.

**B. Exhaustion of Administrative Remedies as to Other Non-Promotions**

The VA argues that the only claim for which Ms. Greaves has exhausted her administrative remedies is the decision not to promote her to Nurse II that was made on or around March 19, 2010. The VA contends that any other non-promotion decision that the VA

---

[6] Pursuant to a stipulation that the Court approved in its Order of July 13, 2012 (Doc. No. 8), the Court dismissed individual defendants Theodore Clay, Brian Griffin, Brian Gainsley, John Boudwin, Cynthia Heidt, Ann Farell, Brenda Reed, Doris Broadley, Richard Citron, and Maureen (last name unknown). This Order also substituted the United States as a defendant only as to Ms. Greaves's common law tort claims. Because the parties have stipulated to dismiss those claims, the United States is also dismissed as a defendant. Accordingly, only Erik Shinseki, in his official capacity as Secretary of the Department of Veterans Affairs, remains as a defendant.

has made since Ms. Greaves's employment with the PVAMC began in 2006 is not properly before the Court.

It is well established that before commencing a Title VII action, a plaintiff must exhaust her administrative remedies, which typically involves filing a charge with the Equal Employment Opportunity Commission ("EEOC") and receiving a right to sue letter from the EEOC. *Devine v. St. Luke's Hosp.*, 406 F. App'x 654, 656 (3d Cir. 2011) (citing 42 U.S.C. § 2000e-5(e)(1)). The exhaustion requirement serves in part to provide the defendant employer with "'notice that a complaint has been lodged against [it] and . . . the opportunity to take remedial action.'" *Lawton v. Sunoco, Inc.*, No. 01-2784, 2002 U.S. Dist. LEXIS 13039, at *4-5 (E.D. Pa. July 17, 2002).

As with private sector employees, federal employees suing federal employers must exhaust administrative remedies before filing suit under Title VII. *Freed v. Consol. Rail Corp.*, 201 F.3d 188, 191-92 (3d Cir. 2000). Employees of federal agencies, like Ms. Greaves, who believe that they have suffered unlawful employment discrimination must proceed through the agency's administrative procedures for EEO claims. First, the employee must contact an Equal Employment Opportunity ("EEO") counselor within 45 days of the alleged discriminatory conduct. 29 C.F.R. Part 1614. The employee must file a complaint with the agency within 15 days of receiving notice that the EEO counselor cannot resolve the matter. *Id.* The agency then investigates the complaint and issues a final action. *Id.* Within 90 days of receiving the final EEO action, the employee may appeal the decision to the EEOC or alternatively, may file a civil action in federal court. *Id.*

In determining whether a plaintiff has properly exhausted her administrative remedies, the Court looks to whether the acts alleged in the Title VII suit are "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *See Antol v. Perry*, 82 F.3d 1291,

1295-96 (3d Cir. 1996) (internal citation omitted).  Here, the administrative proceedings conducted with respect to Ms. Greaves's complaint addressed only the non-promotion that occurred around March 2010.  Ms. Greaves's May 17, 2010 EEO complaint described the alleged discrimination as follows: "In 2006 (October) when I was employed at the VA, my tentative salary was very low compared to my years of experience and education.  I was told by the Nurse recruiter that after the boarding process, I would be nurse II, because of my 8 years of experience and BSN."  While this description appears to assert that the alleged discrimination began in 2006, the complaint identifies the "date of occurrence" of the discrimination as "4/2010," which generally coincides with the VA's evaluation of her 2009 performance.

More significantly, on June 17, 2010, the Department of Veterans Affairs accepted the following claim for investigation, based on Ms. Greaves's EEO complaint:

> Whether on the basis of national origin (Liberian), the Complainant was treated in a disparate manner related to promotion when:  On March 19, 2010, she received the letter informing her that the Nurse Professional Standards Board found her ineligible for promotion to Nurse II at that time.

On October 24, 2010, Ms. Greaves signed an affidavit attesting to this definition of her complaint, confirming that the scope of her EEO complaint was limited to the March 2010 non-promotion decision.

Because Ms. Greaves's EEO complaint and the EEO administrative procedures that the VA conducted with respect to that complaint were limited to the March 2010 non-promotion decision, only a claim based on that decision is properly before this Court.  To the extent that Ms. Greaves's claim is based on any other alleged adverse employment action, she has failed to exhaust those claims at the administrative level.  Accordingly, the Court limits its analysis to the issue of whether, in making the decision in March 2010 not to promote her, the VA discriminated against Ms. Greaves based on her national origin.  *See Antol*, 82 F.3d at 1295-96.

## C. National Origin Discrimination

The parties agree that the familiar *McDonnell-Douglas* burden-shifting analysis applies to this Title VII claim, which proceeds as follows: (1) the plaintiff has the initial burden of establishing the *prima facie* elements of her discrimination claim; (2) if the *prima facie* elements are established, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) if the employer does so, then the plaintiff must establish that the employer's articulated reason for taking the adverse action was actually pretext for unlawful discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). While the employer bears the burden of production at the second step, the burden of persuasion remains with the plaintiff at all times in the analysis. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997).

A plaintiff generally may establish a *prima facie* claim of discrimination by "showing that: (1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

The VA concedes that Ms. Greaves has established the first three elements of her *prima facie* claim, but argues that she cannot succeed on the fourth element, which requires her to show that the decision not to promote her was made "under circumstances that give rise to an inference of unlawful discrimination." *Waldron v. SL Indus.*, 56 F.3d 491, 494 (3d Cir. 1995). She may meet this evidentiary burden by showing, *inter alia*, that the VA treated a similarly situated

9

employee outside her protected class more favorably. *Ballard v. Mercy Catholic Med. Ctr.*, No. 12-0779, 2013 U.S. Dist. LEXIS 92108, at *11 (E.D. Pa. June 28, 2013).

Ms. Greaves offers only the following evidence in support of finding an inference of discrimination: (1) that three individuals involved in reviewing her 2009 performance knew of her Liberian origin; (2) that predominantly Caucasian individuals reviewed her 2009 performance; (3) that she completed a self-evaluation of her 2009 performance, which was not included in the Proficiency Report; and (4) that similarly-situated nurses not of Liberian origin have attained the Nurse II position despite having less nursing experience than Ms. Greaves.

        1.    *Knowledge of Ms. Greaves's National Origin*

Under Title VII, an employer's mere awareness of an employee's membership in a protected class does not, without more, give rise to an inference that the employer took an adverse employment action against the employee *because of* the employee's protected class. *See Felix v. Albert Einstein Healthcare Network,* No. 09-3750, 2012 U.S. Dist. LEXIS 20705, at *16 (E.D. Pa. Feb. 16, 2012) (citing *Iyer v. Everson*, 238 F. App'x 834, 836 (3d Cir. 2007)).

Ms. Greaves asserts that Brian Griffin, Theodore Clay, and Cynthia Heidt knew of her Liberian origin.

First, it is undisputed that Brian Griffin knew of Ms. Greaves's Liberian origin because she disclosed that fact to him. However, Mr. Griffin has testified that he did not inform anyone else involved in her promotion review of her national origin. Aside from establishing Mr. Griffin's awareness of her Liberian origin, Ms. Greaves presents no evidence to support any inference of discrimination on his part in reviewing her 2009 performance. The Proficiency Report that he prepared, and which the Board reviewed, does not mention her national origin,

and, as discussed further below, actually advances an overall positive assessment of her 2009 performance.

Associate Chief Nurse Theodore Clay directly supervises the nurse managers in the CLC and reviews the ratings that they assign to nurses in the Proficiency Reports. Here, Mr. Clay reviewed the rating of "satisfactory" given to Ms. Greaves in Mr. Griffin's Proficiency Report. Mr. Clay testified in his deposition that he had conversations with Ms. Greaves approximately once or twice a week in 2009. Ms. Greaves insists that she informed Mr. Clay of her national origin. However, Mr. Clay testified that he was unaware of her national origin and had not perceived that she spoke with an accent. This evidence is insufficient to establish either that Mr. Clay knew Ms. Greaves was of Liberian origin or to support any inference of discrimination on his part with regard to the non-promotion.

Finally, Ms. Greaves testified that because she speaks with a "distinguishable" accent, Greaves Dep. at 181:14-25, 182: 1-8, and because she has had opportunities to interact with Ms. Heidt at the PVAMC, Greaves Dep. at 36:11-24, Ms. Heidt must have known of her Liberian origin. However, other than establishing that Ms. Heidt may have known Ms. Greaves's national origin through conversing with her, Ms. Greaves points to no evidence to support an inference of discrimination as to Ms. Heidt's role in reviewing her eligibility for promotion.

Furthermore, neither Mr. Griffin, Mr. Clay, nor Ms. Heidt made the ultimate decision not to promote Ms. Greaves. Margaret Caplan made that decision, and Ms. Greaves presents no evidence at all that Ms. Caplan was aware of her national origin during the relevant period of review.

Nor has Ms. Greaves presented any evidence that the Board members or any others involved in reviewing her 2009 performance knew her, worked with her, or had access to any information in her personnel file that identified her national origin.

By establishing only that certain individuals involved in reviewing her eligibility for promotion knew, or potentially knew, of her Liberian origin, Ms. Greaves has failed to raise an inference of discrimination on the part of any of these individuals with respect to her promotion review. *See Felix,* 2012 U.S. Dist. LEXIS 20705, at *16.

2. *Race of Individuals Involved in 2009 Promotion Review*

Ms. Greaves argues that the Caucasian race of her supervisor Mr. Griffin, members of the Board including Ms. Garvin, and Nurse Executive Ms. Heidt, further supports her argument that she was not promoted based on her national origin. But the mere fact that people who reviewed Ms. Greaves's 2009 performance—none of whom made the decision not to promote her—were outside of her protected class is insufficient to raise an inference of discrimination. *See Motto v. Wal-Mart Stores East, LP*, No. 11-2357, 2013 U.S. Dist. LEXIS 63435, at *18 (E.D. Pa. May 3, 2013) ("The fact that [plaintiff] is black and [plaintiff's store manager] is white is not sufficient to suggest that [the store manager's] decision to fire [plaintiff] was discriminatory").

3. *Ms. Greaves's 2009 Self-Evaluation*

Next, the Court finds that Ms. Greaves has not established a material factual dispute as to whether she completed and submitted a self-evaluation of her 2009 performance. Ms. Greaves insists that she prepared a self-evaluation in 2009 in a Microsoft Word document and submitted it to Mr. Griffin for him to include in the Proficiency Report. However, she provides neither an electronic nor hard copy of this document, or any other evidence to show that she submitted a self-evaluation. The 2009 Proficiency Report, which Ms. Greaves signed to confirm her review,

12

notes that she "[w]as offered [the opportunity] to provide feedback into her proficiency report but did not conduction [sic] a self-evaluation." Doc. 17, Ex. 1. Ms. Greaves has submitted the following explanation for why she signed the report despite this alleged inaccuracy:

> I looked at [the Proficiency Report], and I even discussed with the nurse manager and told him I wasn't given an opportunity to do one. If I remember correctly, he didn't give it to me in time to do it. . . . I could not do a self-evaluation and I told him that and he still left it in there . . . . When I looked at my proficiency report and I saw that [the nurse manager] had written satisfactory for everything, I was more concerned with that, that my performance as a nurse was satisfactory. That's what I was looking at.

Greaves Dep. 48:19-25, 49:25, 50:1-4. Further, Ms. Greaves has testified that she has "only done one self-evaluation" while working at the PVAMC, and thinks that the one occasion was in 2009. Greaves Dep., at 41:12-13, 17-18. The VA argues that Ms. Greaves is mistaken as to which year she submitted a self-evaluation, noting that the Proficiency Report for the *following* year (covering her 2010 performance) states that she provided "feedback into the development of her evaluation." Doc. No. 31, Ex. 11.

Assuming for the sake of argument that Mr. Griffin received, but did not include, Ms. Greaves's self-evaluation in the 2009 Proficiency Report (of which failure there is no record evidence), Ms. Greaves also fails to show that the inclusion of a self-evaluation would have affected the promotion decision. She argues that Mr. Griffin's comment in the Proficiency Report indicating that she did not give a self-evaluation reflected negatively on her performance, and hence, her eligibility for promotion. However, she refers to no evidence that she was denied promotion *because* she did not complete a self-evaluation. Moreover, in assessing a nurse's eligibility for promotion, the Board ordinarily reviews only the Proficiency Report and not the original self-evaluation provided to the Nurse Manager. Dep. of Brian Griffin, April 8, 2013, at 49:12-20 (Doc. No. 31, Ex. 7). More significantly, the Board Action that explains the Board's

13

recommendation of non-promotion provides no basis for inferring that the Board viewed negatively Ms. Greaves's failure to submit a self-evaluation.

Finally, Mr. Griffin's Proficiency Report bears no indicia of discrimination, but rather presents an overall positive evaluation of Ms. Greaves's 2009 performance.[7] The Board reviewed this positive evaluation and ultimately determined that her performance did not warrant promotion to Nurse II. Even if the Board incorrectly assessed Ms. Greaves's performance, without any evidence that unlawful discrimination informed that assessment, Title VII does not provide a remedy. In evaluating a Title VII claim of discrimination, this Court does not "sit as a super-personnel department that reexamines an entity's business decisions." *See Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (internal quotation omitted). Because Ms. Greaves has not presented any evidence that Mr. Griffin disregarded a self-evaluation of her 2009 performance, and has not shown that the inclusion of a self-evaluation in the Proficiency Report would have had any effect on the Board's recommendation, Ms. Greaves has failed to raise a genuine issue of material fact as to this issue.

4. *Nurses "Similarly Situated" to Ms. Greaves*

Finally, the Court concludes that Ms. Greaves has not identified any nurse outside of her national origin group who was otherwise "similarly situated" to her but treated more favorably. At the summary judgment stage, the burden rests with Ms. Greaves to demonstrate that she and her chosen comparators are "similarly situated," and that her employer treated the comparators more favorably. *See Warfield v. SEPTA*, 460 F. App'x 127, 130 (3d Cir. 2012). To be "similarly

---

[7] For example, Mr. Griffin makes the following comments about Ms. Greaves in the Proficiency Report:
- "Practice: Prioritizing care on busy night shift tour making assignments for all staff."
- "Quality of Care: Serves as a leader by demonstration of proper medication safety, hand hygiene, and continuity of care through adherence to time and attendance policy."
- "Collegiality: She uses the team approach in the development of care plans taking all communications into consideration."
- "Resource utilization: With limited night time resources she assigns care properly for skill level."

14

situated" for purposes of Title VII, "'comparator employees 'must be similarly situated in all relevant aspects'" of their employment. *Philpot v. Amtrak*, No. 10-1276, 2011 U.S. Dist. LEXIS 127615, at *6 (E.D. Pa. Nov. 3, 2011) (citing *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011)). The focus on whether the employer treated the comparators more favorably is "on the particular criteria or qualifications identified by the employer as the reason for the adverse action." *Simpson v. Kay Jewelers*, 142 F.3d 639, 647 (3d Cir. 1998) (internal citation omitted); *see also Warfield*, 460 F. App'x at 130.

As comparators, Ms. Greaves has identified 3 non-Liberian nurses—Beverley Smith, Ava Gray, and Barbara Mroz— who the VA has either hired as, or promoted to, Nurse II, but who were allegedly less qualified than Ms. Greaves when they attained that position.

To bolster her argument that these individuals were similarly situated to her, Ms. Greaves provides *only* a signed, unsworn Certification detailing her personal knowledge of certain facts (Doc. No. 19, Ex. 10). As to Ms. Smith, Ms. Greaves asserts that, "[b]ased upon my years of experience working for the VA and my personal observations . . . [Ms. Smith] had only approximately four or five years of experience when she was initially hired as Nurse II" in Unit 2C (Ms. Greaves's unit).[8] Ms. Greaves alleges that Ms. Gray had "very minimal experience, was a new graduate and was promoted" to Nurse II in Unit 2C. Lastly, Ms. Greaves claims that Ms. Mroz had "less nursing experience" but was also promoted to Nurse II in Unit 2C.

A plaintiff's own unsworn statements are not sufficient evidence to dispute a fact in response to a summary judgment motion. *See Fowle v. C&C Cola*, 868 F.2d 59, 67 (3d Cir. 1989); *Lopresti v. Cnty. of Lehigh*, No. 12-2832, 2013 U.S. Dist. LEXIS 79453, at *11-12 n. 3

---

[8] The VA objects to Ms. Smith as a comparator because she was *hired* as a Nurse II, and the process for determining at what level to hire a nurse differs from the promotion process. The Court need not resolve this issue because even if the VA's hiring and promotion processes were sufficiently similar, Ms. Greaves has failed to show that she and Ms. Smith are similarly situated in other relevant aspects of their employment.

(E.D. Pa. June 6, 2013) (internal citation omitted). Thus, the Court will not consider this evidence.

Nevertheless, even assuming the statements set forth in the Certification were properly before the Court, the assertions in the Certification do not satisfy Ms. Greaves's burden to show that Ms. Smith, Ms. Gray, and Ms. Mroz were "similarly situated" comparators. Ms. Greaves has not pointed to any personnel records, self-evaluations, Proficiency Reports, Board Actions, or other evidence regarding the hiring or promotion decisions for these individuals. Rather, she has shown only that the VA hired or promoted individuals to Nurse II who may have had fewer than the 8 years of VA-employment Ms. Greaves had by 2009. As described above, experience is only *one* of the criteria for promotion. Without further information as to whether Ms. Smith, Ms. Gray, and Ms. Mroz met the educational and "performance dimensions" requirements for Nurse II, the Court cannot determine whether these employees are similarly situated to Ms. Greaves in critical aspects of their employment. *See Simpson*, 142 F.3d at 647.[9]

Therefore, Ms. Greaves has failed to meet her burden to show that the VA has treated similarly-situated individuals outside of her protected class more favorably.

---

[9] To rebut Ms. Greaves's contention that the VA discriminates against nurses on the basis of national origin in making promotion decisions, the VA points to Yonas Soquar, who is of Eritrean national origin. Mr. Soquar was subject to the same promotion review process as Ms. Greaves, and was promoted to Nurse II in Ms. Greaves's unit at some point before 2010. Declaration of Yonas Soquar (Doc. No. 31, Ex. 14). Ms. Greaves argues that Mr. Soquar is not comparable to her because he is not of Liberian origin. Because the VA is not required to produce "rebuttal" comparators at the summary judgment stage, the Court need not decide whether Mr. Soquar is a comparator for purposes of evaluating Ms. Greaves's Title VII claim. The Court observes only that the VA's evidence of Mr. Soquar's promotion supports an inference that the VA does not discriminate on the basis of non-United States national origin in making promotion decisions.

Further, the VA offers evidence that two nurses with more experience at the PVAMC than Ms. Greaves, who have undergone the same promotion review process, but who are not members of her protected class, have also not been promoted to Nurse II. These nurses are Arthur Camacho, a Nurse I in Unit 1C who has worked at the PVAMC since 2005, and Raphael Gonzalez, a Nurse I in Unit 1C who has worked at the PVAMC since 2002. Ms. Greaves contends that these nurses are not comparable to her because they work in a different unit and have a different supervisor. The determination as to whether employees are similarly situated for purposes of Title VII often includes a showing that they have the same supervisor, but sharing the same supervisor is not dispositive in this analysis. *See Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009). Nevertheless, there is not sufficient record evidence for the Court to determine whether these employees are sufficiently similar to Ms. Greaves for purposes of comparison under Title VII. Again, the Court observes that this evidence merely supports an inference that a nurse's national origin does not inform the VA's promotion decisions.

Ms. Greaves offers no other evidence that she was discriminated against based on her Liberian origin. Because she cannot set forth a *prima facie* case of discrimination, the Court need not address whether she can overcome the VA's articulated non-discriminatory reason for not promoting her to Nurse II.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Ms. Greaves has failed to raise any issue of material fact that could permit a reasonable jury to find in her favor. Accordingly, the Court will grant the VA's motion for summary judgment. An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE